COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Bumgardner and Frank
Argued at Richmond, Virginia


STEPHEN ARTHUR GERMANI

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1521-04-2                    JUDGE RUDOLPH BUMGARDNER, III
                                                         OCTOBER 11, 2005
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF HANOVER COUNTY
                              John R. Alderman, Judge

            G. Russell Stone, Jr. (Cary B. Bowen; Bowen, Champlin, Carr,
            Foreman & Rockecharlie, on brief), for appellant.

            Paul C. Galanides, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


        Stephen Arthur Germani appeals his conviction of possession of marijuana in a

correctional facility, Code § 53.1-203.[1]  He contends the evidence is insufficient to prove he

knowingly and intentionally possessed marijuana in a correctional facility.  Finding no error, we

affirm.

        On appeal, we review the evidence and the reasonable inferences fairly deducible

therefrom in the light most favorable to the Commonwealth.  Commonwealth v. Hudson, 265

Va. 505, 514, 578 S.E.2d 781, 786, cert. denied, 540 U.S. 972 (2003).  Deputy Noah Rogers

arrested the defendant for driving under the influence and found marijuana in the vehicle.  The

deputy could not search the defendant before transporting him to jail because he was extremely

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 53.1-203(6) provides that "It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to . . . Procure, sell, secrete or have in his possession . . . marijuana."

confrontational and hostile. The deputy repeatedly asked the defendant whether he had additional drugs. When they arrived at the jail, the deputy warned, "I'm giving you one last chance, you take anything past those doors and, you know, it's going to be a much bigger penalty if you have anything on you."

The defendant continued to be combative after taking a breath test. The deputy placed him in a "side cell" while the magistrate completed his committal order. The defendant was "kicking the door and yelling" and "extremely belligerent." When officers entered the cell to serve the order on him and get him to complete the intake processing, the defendant had maneuvered his handcuffed hands from behind his back to in front. He wore a t-shirt and had another shirt lying on the bench. The pocket of the shirt on the bench contained a bag of marijuana. The defendant was wearing this shirt when he was arrested, and it was returned to the defendant as his property. No one else was in the cell with the defendant, and the shirt had not been in the cell earlier that night.

The Commonwealth must "point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984). Before entering the jail, the defendant was repeatedly warned about the increased penalty for possession of narcotics inside the jail walls. The officers found marijuana in the pocket of the shirt the defendant was wearing when he was arrested. The shirt was not on the bench when the defendant was placed in the cell, and no one else was in the cell with him. The defendant accepted the shirt as his property.

The defendant argues no evidence showed that the marijuana was in the shirt when he wore it or that he was aware of the marijuana in the shirt found beside him in the jail cell. He

maintains the evidence fails to show he intended to possess the marijuana found in the shirt or that he intended to possess it in the jail. However, the facts permitted the trial court to find reasonably that the defendant knowingly and intentionally possessed the marijuana outside the jail, was warned against bringing it into the jail, deliberately chose to ignore the warning, and brought it into the jail. From those findings, the trial court could reasonably infer that the defendant intentionally took the marijuana into the jail. "After determining credibility and assessing the weight of the testimony, the [trier of fact] must ascertain what reasonable inferences arise from the facts they found proven by that testimony." Pease v. Commonwealth, 39 Va. App. 342, 354, 573 S.E.2d 272, 278 (2002), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). "We let the decision stand unless we conclude no rational [trier of fact] could have reached that decision." Id. at 355, 573 S.E.2d at 278. The evidence permitted the trial court to find the defendant knowingly and intentionally possessed the marijuana in a correctional facility. Accordingly, we affirm.

Affirmed.

Elder, J., dissenting.

I believe the evidence fails to support a finding that appellant intentionally and voluntarily brought marijuana into the jail. Appellant possessed the marijuana prior to his arrest, and his presence in the jail was involuntary. His mere failure to admit that possession in response to police questioning prior to being taken to jail proved knowledge but failed to prove he intentionally and voluntarily possessed the marijuana while inside the jail. Thus, I respectfully dissent.

Code § 53.1-203 provides in relevant part as follows:

> It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to:
>
> *   *   *   *   *   *   *
>
> 6. Procure, sell, secrete or have in his possession a [Schedule III] controlled substance . . . or marijuana . . . .
>
> *   *   *   *   *   *   *
>
> . . . For a violation of subdivision 6, [the prisoner] shall be guilty of a Class 5 felony.

The Commonwealth contends this statute defines a strict liability offense and that it was not required to prove appellant *intended* to possess marijuana in a correctional facility. It cites Esteban v. Commonwealth, 266 Va. 605, 587 S.E.2d 523 (2003), in support of this proposition. I believe Esteban is distinguishable and that principles of constitutional law bar appellant's conviction under the facts of this case.

Esteban involved a conviction for violating Code § 18.2-308.1(B), which provides in relevant part that "'if any person possesses any firearm . . . while such person is upon [the premises of] . . . any public . . . elementary . . . school, including buildings and grounds, . . . he shall be guilty of a Class 6 felony.'" Id. at 607, 587 S.E.2d at 524 (quoting Code

- 4 -

§ 18.2-308.1(B)).  It was undisputed that Esteban, a teacher at the school, brought onto the premises a bag containing a revolver.  Id. at 607-08, 587 S.E.2d at 525.  Esteban claimed she had forgotten the revolver was in the bag and contended she was entitled to an instruction requiring the Commonwealth to prove she "'knew she possessed the firearm'" on school property.  Id. at 608-09, 587 S.E.2d at 525.

In rejecting Esteban's contention, the Supreme Court held as follows:

> [T]he law is clear that the legislature may create strict liability offenses as it sees fit, and there is no constitutional requirement that an offense contain a mens rea or scienter element.  Thus, courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that *the guilty act alone makes out the crime*.
> In the final analysis, the issue whether mens rea or scienter is a necessary element in the indictment and proof of a particular crime becomes a question of legislative intent to be construed by the court.

Id. at 609, 587 S.E.2d at 526 (citation omitted) (emphasis added).  The Court noted "the General Assembly recognized that the presence of a loaded revolver on school property created great dangers for [all those present] either from the accidental or intentional discharge of the weapon" and that the fact that "a person . . . innocently brings a loaded revolver onto school property does not diminish that danger."  Id. at 609-10, 587 S.E.2d at 526.  It concluded the legislature "expressly" chose not "to insert a mens rea element into the offense" and that "to require proof thereof[] would defeat the statutory purpose."  Id. at 610, 587 S.E.2d at 526.  Although the legislature may dispense with the intent requirement, the Supreme Court recognized in Esteban that proof of a "guilty act" remains necessary to support one's conviction for a crime.  Id. at 609, 587 S.E.2d at 526.

It is well settled that criminal liability may not be imposed in the absence of "an act, or an omission to act where there is a legal duty to act.  Thus the common law crimes are defined in terms of act or omission to act, and *statutory crimes are unconstitutional unless so defined*."

Wayne R. LaFave, Criminal Law § 6.1, at 302 (4th ed. 2003) (emphasis added). Equally clear is that

> criminal liability requires that the activity in question be *voluntary*. The deterrent function of the criminal law would not be served by imposing sanctions for involuntary action, as such action cannot be deterred. Likewise, assuming revenge or retribution to be a legitimate purpose of punishment, there would appear to be no reason to impose punishment on this basis as to those whose actions were not voluntary.

Id. § 6.1(c), at 304-05 (emphasis added).[2] Thus, "all crimes of affirmative action," even strict liability crimes, "require something in the way of a mental element -- at least an intention to make the bodily movement which constitutes the act which the crime requires." 1 Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law § 3.5(e), at 314 (1986). In Esteban, the defendant's intentional or voluntary act was going onto school grounds with the weapon in her possession. Whether or not she knew the weapon was in her possession and intended to take the weapon with her, it was undisputed that she was intentionally and voluntarily on school grounds. In appellant's case by contrast, appellant's presence in a correctional facility while in possession of marijuana, although knowing, was not proved to be intentional or voluntary.

Thus, assuming without deciding the General Assembly intended to make possession of marijuana by an inmate in a correctional facility a strict liability offense, the offense nevertheless must exclude cases of *involuntary* possession of marijuana in a correctional facility. See State v. Tippetts, 43 P.3d 455 (Or. Ct. App. 2002) (decided under statute codifying voluntary act requirement); cf. Martin v. State, 17 So. 2d 427, 427 (Ala. Ct. App. 1944) (holding "that an accusation of drunkenness in a designated public place cannot be established by proof that the accused, while in an intoxicated condition, was involuntarily and forcibly carried to that place by

---

[2] Some states have codified this requirement. See, e.g., 720 Ill. Comp. Stat. 5/4-1 (2005); Or. Rev. Stat. § 161.095(1) (2005); Tex. Penal Code § 6.01(a) (2005).

the arresting officer"), cited with approval in Powell v. Texas, 392 U.S. 514, 541 n.1, 88 S. Ct. 2145, 2158 n.1, 20 L. Ed. 2d 1254 (1968) (Black, J., joined by Harlan, J., concurring); Fontaine v. State, 762 A.2d 1027, 1032 (Md. Ct. Spec. App. 2000) (holding that "acts of appellant after he was arrested were not voluntary" and, thus, that where he was arrested in Delaware and taken to Maryland by police, evidence failed to prove he intended to distribute marijuana in his possession while in Maryland); Commonwealth v. Collier, 693 N.E.2d 673, 675-76 (Mass. 1998) (where defendant was passenger in car driven by third party, holding conviction for violation of protective order required proof that defendant's coming within proscribed distance of former wife was voluntary). But see State v. Winsor, 110 S.W.3d 882, 885-88 (Mo. Ct. App. 2003) (holding willful possession of a controlled substance itself constitutes the requisite voluntary act and that presence in county jail need not have been voluntary); Brown v. State, 89 S.W.3d 630, 632-33 (Tex. Crim. App. 2002) (en banc) (holding statute requiring voluntariness of act to be punished "'refers only to one's physical bodily movements'" and that defendant "compelled to enter into [a] correctional facility" "'in custody, under restraint'" while in possession of marijuana "voluntarily" possessed marijuana in correctional facility), rev'g 35 S.W.3d 183 (Tex. App. 2000).

> [T]he mere fact that defendant voluntarily possessed the drugs before he was arrested is insufficient to hold him criminally liable for the later act of introducing the drugs into the jail. Rather . . . the involuntary act must, at a minimum, be a reasonably foreseeable or likely consequence of the voluntary act on which the state seeks to base criminal liability. [Absent additional] facts, no reasonable juror could find that the introduction of contraband into the jail was a reasonably foreseeable consequence of [merely] possessing it.

Tippetts, 43 P.3d at 459-60 (citing American Law Institute, Model Penal Code § 2.01, at 120 (Tentative Draft no. 4 1955)) (citation and footnote omitted). "[M]ere possession of drugs when [a defendant is] taken by police to a correctional facility is not legally sufficient to prove that he

voluntarily introduced contraband into that facility[,] . . . even if . . . defendant's arrest and the discovery of the drugs were 'readily foreseeable consequences' of his prearrest conduct." State v. Gonzalez, 71 P.3d 573, 574 (Or. Ct. App. 2003) (quoting State v. Delaney, 71 P.3d 93, 93 (Or. Ct. App. 2003)). Compare State v. Thaxton, 79 P.3d 897, 899-900 (Or. Ct. App. 2003) (where driver of car stopped by police put marijuana in pocket of defendant passenger and defendant then put some of marijuana in his own sock, holding jury could find defendant guilty of introducing contraband into jail because evidence supported a finding that "when defendant hid the marijuana in his sock, he knew that the officers were likely to arrest him and take him to jail" and "that putting the marijuana in the sock was a voluntary act directed toward introducing the contraband to the jail").

Appellant argued the evidence failed to prove his taking marijuana into the jail with him was a voluntary act. The trial court, as proof that appellant did, in fact, act with intent to take marijuana into a correctional facility, expressly relied on the fact that appellant "had a number of different opportunities to own up to [the fact that he had marijuana in his possession] outside [the correctional facility] when there wouldn't have been any big deal" but that "he chose not to do so." Appellant's contention that the evidence failed to prove his act was voluntary and intentional was broad enough to encompass an objection to the trial court's rationale that he had a duty to reveal his possession prior to entering the correctional facility in response to questioning by and warnings from correctional officers. Further, I believe the trial court's reliance on appellant's failure to "own up to" the possession "outside" as proof that the act was voluntary constituted reversible error.

As set out above, criminal liability may be imposed based on an omission only where the law imposes a legal duty to act. See LaFave, supra, § 6.1, at 302. Here, the law imposed upon appellant no legal duty to act--by turning the marijuana over to the officers or by alerting them to

- 8 -

the fact that he possessed it. To the contrary, appellant's constitutional right against self-incrimination negated the existence of any legal duty to notify the arresting officers or jail officials, prior to being incarcerated, that he possessed marijuana. See Tippetts, 43 P.3d at 457 n.2 ("The state does not dispute that, without sufficient promise of immunity, . . . the Fifth Amendment to the United States Constitution prevent[s] the state from forcing defendant to choose between admitting to possession of a controlled substance and being charged with introducing that substance into a correctional facility."); Thaxton, 79 P.3d at 899 n.3 (in reviewing sufficiency of evidence to prove possession of marijuana in correctional facility was voluntary act, declining to consider defendant's denial that he possessed marijuana because, "[a]lthough that denial came after he received the Miranda warnings . . . , the officer's suggestion that he would face additional charges if more contraband were found at the jail gave defendant an inappropriate Hobson's choice"); Brown, 35 S.W.3d at 189 (holding that requiring defendant to use "opportunity" to confess to avoid having his actions in taking marijuana into correctional facility deemed voluntary would violate Fifth Amendment).

> [T]he opportunity the officers gave [the defendant to turn over the contraband] was nothing more than an invitation to admit his guilt to a lesser crime in order to avoid arrest and prosecution for a more serious offense. This type of "opportunity" is tantamount to an attempt to compel the defendant to waive his Fifth Amendment privilege against self-incrimination "by threatening to impose . . . other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'"

Brown, 35 S.W.3d at 189 (quoting Lykins v. State, 784 S.W.2d 32, 37 (Tex. Crim. App. 1989) (quoting Minnesota v. Murphy, 465 U.S. 420, 434, 104 S. Ct. 1136, 1146, 79 L. Ed. 2d 409 (1984))) (citation omitted). Thus, I would hold appellant's failure to relinquish the marijuana or to admit possessing it in response to police questioning does not constitute a voluntary omission upon which to base a conviction for violating Code § 53.1-203.

For these reasons, I would conclude the evidence fails to prove possession of marijuana inside a correctional facility is voluntary--and, thus, fails to support a conviction for violating Code § 53.1-203--where a defendant (1) first possessed the substance before entering the facility, at a time when arrest was not reasonably foreseeable, and (2) had no opportunity to dispose of the substance before entering the facility without waiving his rights to remain silent and against self-incrimination.  Thus, I respectfully dissent.